**Affirmed and Opinion filed December 20, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00764-CV

---

## JAMES K. COLLINS AND TONI SHARRETTS COLLINS, Appellants

## V.

## D.R. HORTON-TEXAS LTD, Appellee

---

### On Appeal from the 284th District Court
### Montgomery County, Texas
### Trial Court Cause No. 15-04-04236-CV

---

### O P I N I O N

This case concerns the ownership of land in Montgomery County on which appellee D.R. Horton-Texas Ltd. intends to develop a subdivision.[1] Appellants James K. Collins and Toni Sharetts Collins claimed ownership of some of the land

---

[1] The case was transferred to this court from the Ninth Court of Appeals by Texas Supreme Court Transfer Order. Because of the transfer, we must decide the case in accordance with the precedent of the Ninth Court of Appeals if our decisions otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

being developed, which was adjacent to their homestead and which they referred to as the Sieberman survey. D.R. Horton sued the Collinses to quiet title, for trespassing on its property and for a declaration concerning the boundaries of the respective properties. The Collinses counterclaimed for adverse possession. A year later, the Collinses added claims for trespass, conversion, and malicious prosecution.[2] D.R. Horton filed a motion for partial summary judgment for a declaration that the Collinses could not claim property rights through the Sieberman survey because (1) the subject property boundary had been judicially determined and (2) the Collinses deed expressly references the judicial determination and, as such, they are estopped to assert rights through the Sieberman survey. The trial court granted the motion.

A few weeks before trial, the Collinses amended their pleadings and added new counterclaims emanating from incidents in 2016. D.R. Horton filed a motion to sever the new claims, which the trial court granted. The Collinses' claims for trespass, conversion, and malicious prosecution were severed, and D.R. Horton's trespass and to quiet title claims and the Collinses' adverse possession claim proceeded to trial. The jury found for D.R. Horton on all claims presented but was not asked to and did not award any damages.

In seven issues, the Collinses challenge (1) the grant of partial summary judgment, (2) that a visiting judge presided over the trial, (3) the denial of their motion for directed verdict, (4) the denial of their motion for judgment notwithstanding the verdict, (5) the denial of their motion for a continuance, (6) the severance of certain of their counterclaims, and (7) the exclusion of certain evidence. We affirm.

---

[2] Among the affirmative defenses and new counterclaims in the amended pleading, the Collinses asked the court to declare ownership of the disputed tract in accordance with the Sieberman survey.

## *Background*

The Collinses assert that their rights to the disputed property derive from a grant of 1/3 of a league of land in 1850 from the State of Texas to Frederick Sieberman, who was among the massacred at Goliad. The Collinses claim to have received a quitclaim deed from the heirs of the Sieberman survey in 2015.

D.R. Horton contends that to the extent the Sieberman survey ever existed, it was extinguished by a 1944 federal court judgment in which the boundaries of two other surveys, the James Hodge and the David Thomas, were determined to meet in the area that would have contained the Sieberman survey. This judgment was affirmed by the Fifth Circuit in *McComb v. McCormack*, 159 F.2d 219 (5th Cir. 1947), and both the judgment and appellate opinion were recorded in the real property records. D.R. Horton additionally maintains that the Collinses are estopped from asserting rights to the disputed property because the deed by which they acquired their homestead property referenced the subdivision plat, which in turn referenced the 1944 judgment recorded in the property records.

The Collinses also assert that even if D.R. Horton is correct that the federal judgment extinguished the Sieberman survey, they adversely possessed the disputed property. As stated, the trial court granted partial summary judgment favoring D.R. Horton on the existence of the Sieberman survey and the Collinses' claim to property rights by way of the survey.[3]

Eleven days before trial, on March 2, 2017, the Collinses moved for a continuance on the grounds that Ms. Collins's was scheduled for hip replacement surgery on the first day of trial (March 13) and Dr. Collins would not be available

---

[3] The trial court "ordered that [the Collinses] take nothing on their claims related in any manner to the [Sieberman survey]." We construe this as granting the declaratory relief requested by D.R. Horton and denying the declaratory relief requested by the Collinses.

for trial because he needed to cover for other doctors in his practice group who had spring break plans. Attached to the motion was a note from Ms. Collins's doctor stating that she needed the surgery and March 13 was the first available date. The trial court denied the motion. On March 13, before trial began, the Collinses moved for reconsideration because Ms. Collins was then at the hospital and Dr. Collins was with her. The trial court again denied the motion. The Collinses were absent for voir dire of the jury panel and for the beginning of testimony, but they were able to attend trial starting with the second day and both were able to testify.

Five days before trial, the trial court severed the Collinses' claims for trespass, conversion, and malicious prosecution, which involved allegations that D.R. Horton came onto the Collinses' property and removed a fence and other personal property and that Dr. Collins was unlawfully arrested after he discharged a firearm. The malicious prosecution claim had been added two weeks before trial and also involved allegations against several new cross-defendants, including D.R. Horton employees and Montgomery County Sheriff's Department personnel.

The issues remaining after the grant of partial summary judgment favoring D.R. Horton and the severance of some of the Collinses' counterclaims went to trial with a visiting judge presiding on March 13, 2017. Ultimately, the jury was asked three questions: two regarding whether the Collinses had adversely possessed the disputed property and one regarding whether the Collinses had trespassed on D.R. Horton's property. The jury found that no adverse possession had occurred but the Collinses had trespassed on D.R. Horton's property. The jury was not asked any damages questions.

The trial court denied the Collinses' motions for directed verdict and judgment notwithstanding the verdict. In its final judgment, the trial court ordered that an affidavit of adverse possession that the Collinses had filed in the property records

4

was "invalid and of no force and effect and . . . null, void, canceled and discharged of record." The court further permanently enjoined the Collinses from interfering with D.R. Horton's use and occupancy of the disputed property.

## I. Partial Summary Judgment on Declaratory Relief

In their first issue, the Collinses contend that the trial court erred in granting partial summary judgment and thereby resolving all issues pertaining to the existence of the Sieberman survey in favor of D.R. Horton. We review a grant of summary judgment under a de novo standard of review. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm if any of the independent summary judgment grounds is meritorious. *State v. $90,235*, 390 S.W.3d 289, 292 (Tex. 2013). This, in turn, means that when a summary judgment motion alleges multiple grounds and the order granting summary judgment does not specify the ground on which judgment was rendered, the appellant must challenge and negate all summary judgment grounds on appeal. *See, e.g., Davis v. Galagaza*, No. 14–16–00362–CV, 2017 WL 1450582, at *2 (Tex. App.–Houston [14th Dist.] Apr. 18, 2017, no pet.) (mem. op.); *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 653 (Tex. App.–Houston [14th Dist.] 2013, no pet.). If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

In its motion, D.R. Horton asserted that (1) the 1944 judgment established the relevant boundaries and (2) the deed by which the Collins acquired their property referenced a subdivision plat that in turn references and recognizes the 1944 judgment and, thus, the Collinses were estopped by deed from asserting the effect of

the judgment. D.R. Horton points out that the Collinses failed to address the estoppel ground in their opening brief on appeal.

In their reply brief, the Collinses argue that they did enough in their opening brief by generally challenging the grant of partial summary judgment. This is incorrect. The estoppel ground was independent of the merits of the ground based on the 1944 judgment. *See Galagaza*, 2017 WL 1450582, at *2; *Heritage Gulf Coast*, 416 S.W.3d at 653. Also in their reply brief, the Collinses attempt to challenge the merits of the estoppel ground. However, we generally do not consider issues raised for the first time in a reply brief and decline to do so here. *See, e.g., HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, No. 14-17-00846-CV, 2018 WL 6217085, at *8 n.10 (Tex. App.—Houston [14th Dist.] Nov. 29, 2018, no pet. h.); *Zurita v. Lombana*, 322 S.W.3d 463, 477 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Because the partial motion for summary judgment could have been based on an unchallenged ground, we overrule the Collinses' first issue. *See Britton*, 95 S.W.3d at 682.

## II. Objection to Visiting Judge

In their second issue, the Collinses contend that the trial court erred in permitting a "disqualified" judge to preside over the trial. Specifically, they assert that they timely objected to the assignment of the visiting judge, and she was therefore disqualified from sitting pursuant to Government Code section 74.053. Tex. Gov't Code § 74.053.

Under section 74.053(b), "[i]f a party to a civil case files a timely objection to the assignment [of a visiting judge], the judge shall not hear the case." An objection under this section must be filed no later than the seventh day after the date the party receives actual notice of the assignment or before the date the first hearing or trial, including pretrial hearings, commences, whichever date occurs earlier. *Id.* §

6

74.053(c). The statute requires an immediate objection to an assigned judge to prevent parties from attempting to "sample" the judge before objecting. *In re Canales*, 52 S.W.3d 698, 703 (Tex. 2001) (orig. proceeding).[4]

The Collinses insist that their objection—filed on March 9, 2017, before the visiting judge presided over any proceedings in the case—was timely.[5] However, in a pretrial conference on February 27, 2017, the district judge informed the parties that a particular visiting judge would be presiding over the trial that was set to begin on March 13. The objection filed on March 9 was therefore not timely because it was filed more than seven days after the Collinses received actual notice of the visiting judge's assignment. *See* Tex. Gov't Code § 74.053(c). Indeed, at the start of trial proceedings on March 13, the visiting judge stated that she could not grant the objection because it was not timely.

As the Collinses point out, the visiting judge apparently signed an order purporting to *grant* the objection on the same day. The signing of this order, however, was clearly a mistake because the visiting judge then presided over the trial and at no point did anyone object to her continuing to preside.[6] In order to preserve a complaint for appellate review, a party must make a timely and sufficiently specific request, objection, or motion in the trial court. Tex. R. App. P. 33.1; *Zewde v. Abadi*, 529 S.W.3d 189, 195 (Tex. App.—Houston [14th Dist.] 2017, no pet.). As discussed above, the Collinses' objection to the visiting judge was not timely, and the Collinses made no objection to the judge continuing to sit after she

---

[4] Under section 74.053(c), a trial court may extend the time to file an objection on written motion by a party who demonstrates good cause. The Collinses did not request and the trial court did not grant an extension in this case.

[5] The Collinses filed their objection on March 9 and presented it to the trial court for a ruling on March 13.

[6] We further note that the judge subsequently signed the final judgment, which stated that the objection to her sitting was overruled because it was not timely.

mistakenly signed an order granting the untimely objection. *Cf. In re S.Q.*, No. 04-18-00119-CV, 2018 WL 3129434, at *1 (Tex. App.—San Antonio June 27, 2018, pet. denied) (mem. op.) ("[A] party impliedly withdraws an objection by participating in a hearing or trial without advising the assigned judge that an objection has been filed and seeking a ruling." (citing *In re Carnera*, No. 05-16-00055-CV, 2016 WL 323654, at *2 (Tex. App.—Dallas Jan. 27, 2016, orig. proceeding) (mem. op.))). The Collinses have therefore not preserved anything for review, and we overrule their second issue.

### III. Motions for Directed Verdict and JNOV

In issues three and four, the Collinses contend respectively that the trial court erred in overruling their motions for directed verdict and judgment notwithstanding the verdict. We review a trial court's decision to grant or deny a motion for a directed verdict and a motion for judgment notwithstanding the verdict under a legal sufficiency standard of review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (explaining that the test for legal sufficiency is the same for directed verdict, judgment notwithstanding the verdict, and appellate no-evidence review). A party challenging the legal sufficiency of the evidence supporting an adverse jury finding on an issue on which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011).

The problem with the Collinses' arguments under these issues is that they are challenging the proof concerning trespass to try title, a cause of action that D.R. Horton did not plead and was not tried and therefore was not at issue in this case. D.R. Horton pleaded causes of action to quiet title, for trespassing on its property and for a declaratory judgment concerning the property boundaries.

To prevail in a trespass to try title action, a plaintiff must usually (1) prove a

8

regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). *See generally* Tex. Prop. Code § 22.001 ("Trespass to Try Title"). The Collinses assert specifically that D.R. Horton failed to prove a regular chain of conveyances back to the sovereign or superior title. They also repeat their arguments that they had title to the Sieberman survey, an issue that was determined by the partial summary judgment and not at trial.

Even after D.R. Horton pointed out in its brief that the Collinses were challenging a cause of action that it did not pursue, the Collinses did not, in their reply brief, explain how the arguments made could apply to any of D.R. Horton's actual causes of action.[7] We decline to make the Collinses' argument for them. *See Bhatia v. Woodlands N. Houston Heart Ctr., PLLC*, 396 S.W.3d 658, 666 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

We overrule the Collinses' third and fourth issues.

### IV. Motion for Continuance

In their fifth issue, the Collinses contend that the trial court erred in denying their motion for a continuance. The Collinses first requested a continuance five days before trial based on Ms. Collins's scheduled surgery and Dr. Collins's need to cover for other doctors. The Collinses re-urged the motion on the first day of trial. The Collinses were then absent for voir dire of the jury panel and for the beginning of

---

[7] The jury was asked if the Collinses had trespassed on D.R. Horton's property, with trespass being defined as "an entry on the property of another without having consent or authorization of the owner. To constitute trespass, entry upon another's property need not be in person, but may be made by causing or permitting a thing to cross the boundary of the property." D.R. Horton's quiet title claim sought to remove the cloud on D.R. Horton's title created by the affidavit of adverse possession filed by the Collinses. In connection with this claim, the jury was asked if the Collinses had adversely possessed the disputed property.

9

testimony, but they were able to attend trial starting with the second day, and both were able to testify.

We review a trial court's order denying a motion for continuance for a clear abuse of discretion and on a case-by-case basis. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court only abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id*. As the Collinses acknowledge, the absence of a party to a proceeding, standing alone, is not sufficient cause to grant a continuance. *See, e.g., Pena v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00612-CV, 2012 WL 5974076, at *5 (Tex. App.—Austin Nov. 21, 2012, no pet.) (mem. op.). The absent party must show that it had a reasonable excuse for not being present and that its absence would result in prejudice. *Id*.

Assuming without deciding that the Collinses asserted reasonable excuses for their absences, we turn to their claims that they were prejudiced by missing the first day of trial. The Collinses specifically argue that they were prejudiced because they were not present during voir dire to determine if the jury selected has any bias against them. They also complain that testimony began without them present to "ascertain any bias" of the witnesses. The Collinses offer no relevant authority or record citations in support of this alleged prejudice. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to include relevant citations to authorities and the record). They further offer no explanation how their presence would have revealed any possible bias by either potential jurors or testifying witnesses. The Collinses' counsel was present and actively participated in trial proceedings on the first day. The Collinses do not suggest anything that their counsel would have or could have done differently had they also been present. They present no evidence of prejudice they sustained.

Courts finding prejudice have done so based on evidence of prejudice actually

10

sustained, not on merely speculative or potential prejudice. *See Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 288 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). To hold that the trial court erred under such circumstances would effectively eliminate the requirement that a party demonstrate prejudice in order to obtain a reversal based on the denial of a continuance. *Cf. Henry v. Tax Appraisal Dist. of Bell Cty.*, No. 04-13-00075-CV, 2013 WL 6672512, at *2 (Tex. App.—Beaumont Dec. 18, 2013, no pet.) (mem. op.) (rejecting general assertion of prejudice based on "fairness and due process" as inadequate).

Because the Collinses fail to demonstrate prejudice resulting from the denial of their motion for a continuance, we overrule their fifth issue.

## V. Severance of Counterclaims

In their sixth issue, the Collinses contend that the trial court erred in severing their counterclaims for trespass, conversion, and malicious prosecution five days before trial. The first two claims, trespass and conversion, concerned allegations that D.R. Horton personnel came onto the Collinses' property and removed a fence and other personal property. The malicious prosecution claim was added two weeks before trial and asserted that Dr. Collins was unlawfully arrested after he discharged a firearm. The malicious prosecution claim also involved allegations against several new cross-defendants, including D.R. Horton employees and Montgomery County Sheriff's Department personnel.

"Any claim against a party may be severed and proceeded with separately." Tex. R. Civ. P. 41. Accordingly, trial courts have broad discretion in determining when claims should be severed. *State v. Morello*, 547 S.W.3d 881, 889 (Tex. 2018). A claim is considered properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven

11

with the remaining action that they involve the same facts and issues. *Id*. In severing cases, courts look to avoid prejudice, do justice, and increase convenience. *In re State*, 355 S.W.3d 611, 613 (Tex. 2011).

The parties primarily dispute the third factor. The Collinses do not dispute that the controversy involved multiple causes of action or that the severed claims could have been brought as separate lawsuits. They argue instead that the trespass, conversion, and malicious prosecution claims involve the same facts and issues as many of the nonsevered claims because "it was Horton's claim to the disputed land that was the catalyst" for these torts.

D.R. Horton filed its lawsuit in April 2015. The Collinses' trespass and conversion claims concern alleged conduct by D.R. Horton occurring in 2016. The Collinses alleged that after D.R. Horton's attorney sent them a letter in June 2016 indicating that D.R. Horton would begin work on one section of the proposed development, D.R. Horton entered the disputed property on July 1 through a different section, where the Collinses had erected a fence and placed "tables, chairs, umbrellas, and hammocks." According to the Collinses, upon entering the disputed property, D.R. Horton destroyed the fence and removed the other personal property items. They claim that the entry itself was a trespass and the destruction and removal of the personal property constituted conversion.

In their malicious prosecution claim, the Collinses allege that Dr. Collins was unlawfully arrested after an incident at the property during which he fired a shotgun into the ground.[8] The Collinses assert that D.R. Horton employees provided false and incomplete information to the prosecutor after the incident, which led to criminal charges being filed. The charges were subsequently dismissed by the prosecutor.

---

[8] The Collinses state that he did this to alert a D.R. Horton backhoe operator to his presence.

Under this claim, the Collinses added four additional defendants, two employees of D.R. Horton and two employees of the sheriff's office.[9]

We begin our analysis by noting that all three added claims allege transgressions occurring during the pendency of the lawsuit. *See generally In re Liu*, 290 S.W.3d 515, 523-24 (Tex. App.—Texarkana 2009, orig. proceeding) (explaining that trial court could have reasonably concluded that close temporal proximity of alleged torts and possibility that damages were caused by several tortfeasors in combination suggested claims should be tried together). The claims remaining after the severance included the Collinses' adverse possession and trespass to try title causes of action as well as D.R. Horton's causes of action for trespass, to quiet title, and for a declaration concerning the property boundaries. Although, as the Collinses argue, the new claims may have had their roots in the property dispute that was part and parcel of the remaining claims, the severed claims concerned different events, different witnesses, some different issues, and, as to the malicious prosecution claim, different defendants than did the remaining claims. Consequently, consideration of the new and remaining claims together may well have caused confusion in the proceedings, particularly for the jury. *Cf. In re Ben E. Keith Co.*, 198 S.W.3d 844, 854 (Tex. App.—Fort Worth 2006, orig. proceeding) (holding trial court erred in refusing to sever claims due in part to likely jury confusion resulting if the claims were tried together). Under these circumstances, we cannot say that the trial court abused its discretion in severing the claims. *See Morello*, 547 S.W.3d at 889. Accordingly, we overrule the Collinses' sixth issue.

## VI. Exclusion of Evidence

---

[9] The Collinses asserted that D.R. Horton employed several off-duty sheriff's deputies to accompany its employees to the property. It is unclear from the Collinses' pleadings whether the sheriff's employees added as defendants were purportedly working for D.R. Horton at the time of the incident.

Lastly, in their seventh issue, the Collinses contend that the trial court erred "when it prevented [the Collinses] from admitting certified complete official government maps into evidence." In support, the Collinses first assert that the trial court granted a portion of D.R. Horton's motion in limine in which it asked the court to exclude certain government records that referenced the Sieberman survey.[10] A trial court's grant or denial of a motion in limine, however, does not preserve error concerning the admission or exclusion of evidence. *Ferguson v. Plaza Health Servs. at Edgemere*, No. 05-12-01399-CV, 2014 WL 3401116, at \*2 (Tex. App.—Dallas July 10, 2014, pet. denied) (mem. op.); *see also Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 600 (Tex. App.—Houston [14th Dist.] 2017, pet denied) ("By such an order, the trial court neither admits nor excludes evidence, but merely requires a party to obtain the trial court's permission, at the bench or otherwise outside of the jury's presence, before asking potentially prejudicial questions or introducing potentially prejudicial evidence.").

To preserve error for the exclusion of evidence after a motion in limine has been granted, a party must, during trial: (1) approach the bench and ask for a ruling, (2) formally offer the evidence, and (3) obtain a ruling on the offer. *Ferguson*, 2014 WL 3401116, at \*2. If, at that time, the court rules the evidence inadmissible, the party must further preserve the evidence through an offer of proof. *Id*. The fact that the trial court may have granted a particular portion of D.R. Horton's motion in limine therefore did not preserve the exclusion of the evidence for our review.

The Collinses additionally provide two citations to the reporter's record regarding the alleged exclusion of this evidence. The first citation is to a discussion occurring before trial began, wherein the Collinses' counsel expressly agreed that

---

[10] The Collinses do not cite to where in the record the trial court granted a motion in limine pertaining to the documents in question.

certain exhibits pertaining to the Sieberman survey were intended only as an offer of proof and were not being offered into evidence for trial purposes—the issue of the Sieberman survey having been disposed of by the partial summary judgment.

At the second citation, D.R. Horton's counsel objected apparently because he thought that Dr. Collins was about to testify that a particular line on an admitted exhibit referenced the Sieberman survey. Far from arguing that Dr. Collins should be permitted to so testify, the Collinses' lawyer apologized to the court and reminded Dr. Collins not to testify about the Sieberman survey.[11] The exhibit itself was admitted.

The Collinses do not cite to any other place in the record for where they offered the allegedly excluded documents into evidence and obtained an adverse ruling. Accordingly, they have not preserved this issue for our review. *See id*.; *see also Indus. III, Inc. v. Burns*, No. 14-13-00386-CV, 2014 WL 4202495, at *12 (Tex. App.—Houston [14th Dist.] Aug. 26, 2014, pet. denied) (mem. op.) ("To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence or a summary of the evidence and secure an adverse ruling from the court."). We overrule the seventh issue.

We affirm the trial court's judgment.


/s/    Martha Hill Jamison
        Justice


Panel consists of Justices Jamison, Wise, and Jewell.

---

[11] Counsel stated: "I have instructed Dr. Collins not to bring this up, and I'll ask him once again, please don't say that. So I apologize to that extent."

15